IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| RICHARD C.B.,<br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>        Defendant. | Case No. 1:20-cv-01207-JEH |

**Order and Opinion**

Now before the Court is the Plaintiff Richard C.B.'s Motion for Summary Judgment (Doc. 11) and the Commissioner's Motion for Summary Affirmance (Doc. 17).[1] For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS this matter for proceedings consistent with this opinion.[2]

**I**

Richard C.B. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on April 10, 2017 alleging disability beginning on March 8, 2015. His claims were denied initially on December 7, 2017 and upon reconsideration on April 4, 2018. Richard filed a request for hearing concerning his DIB and SSI applications which was held on April 24, 2019 before the Honorable John M. Wood (ALJ). At the hearing, Richard was represented by an

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 13, 14).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 8) on the docket.

1

attorney, and Richard and a vocational expert (VE) testified. Also, Richard amended his alleged onset date at the hearing to June 26, 2018. AR 78-79. Following the hearing, Richard's claims were denied on June 12, 2019. His request for review by the Appeals Council was denied on March 30, 2020, making the ALJ's Decision the final decision of the Commissioner. Richard timely filed the instant civil action seeking review of the ALJ's Decision on June 1, 2020.

## II

At the April 2019 hearing, Richard was 55 years old and lived part of the time with his girlfriend and part of the time with his elderly mother. He had a college education and previously worked as a sales person in floor covering and wireless telephones. He testified that he was not currently working in sales because he was "not able to stand on [his] feet the length of time that it takes . . . the weight on the bottom of [his] shoes is ungodly after a limited amount of time on [his] feet." AR 41-42. He added that from April 2016 forward he had standing and walking difficulties, and because of his COPD, according to his pulmonary doctor (Jon Michel, M.D.), he was not allowed to walk for more than a block without taking a break. AR 44. On his Form SSA-3368, Richard alleged the following conditions limited his ability to work: neuropathy; chronic obstructive pulmonary disease (COPD); non-traumatic brain injury; aspiration pneumonia; Wernicke's encephalopathy; oropharyngeal dysphagia; cerebellar ataxia due to alcohol; hernia, umbilical; fatty liver; and smoker. AR 228.

Richard testified that his COPD "definitely" impacted his walking, and he was "always using [his] breathalyzer . . . treatment." AR 46. He also said that he could not carry a 10 pound box of tile, a 20 pound box maximum, without his feet hurting or having issues breathing. Richard answered that his COPD became worse since November 2013. With regard to his treatment for COPD, Richard explained that it had changed in the last six years. Specifically, Dr. Michel changed

his breathing treatments, put him on medications, and had him on Chantix to quit smoking. Richard used three inhalers for at least the past year, one for quick relief and the other two daily in the morning and at night. He still smoked a pack of cigarettes a day. Though he had sleep apnea, Richard explained that his "mucus problem from the COPD wouldn't let [him]" use a CPAP machine. AR 66. Upon his attorney asking Richard what would prevent him from doing any type of job at all on a regular basis, Richard answered "the walking and the breathing. I mean, it's virtually impossible to do either . . . ." AR 67.

The VE was next questioned.

### III

At Step Two of the Decision, the ALJ found Richard had the following severe impairments: alcohol-induced peripheral neuropathy; a spine disorder; and COPD. AR 18. At Step Three, the ALJ found that Richard did not meet or medically equal any listing at 3.00 (Respiratory Disorders), and the ALJ specifically considered Listing 3.02 (Chronic respiratory disorders due to any cause except CF). He stated Richard did not meet Listing 3.02 "as the record does not show the $FEV_1$ or FVC values required" (Listing 3.02A and B). AR 21. As support for his conclusion, the ALJ wrote "(See pulmonary function testing at Exhibit 4F/3-4). The ALJ also noted that there was no evidence that Richard had any exacerbations or complications requiring three hospitalizations lasting at least 48 hours within a 12-month period (Listing 3.02D).

At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes or scaffolds, and can perform other postural activities occasionally. The claimant must avoid hazards and avoid

3

>concentrated exposure to extreme temperatures, wetness, humidity, and pulmonary irritants.

AR 21.  The ALJ recited Richard's hearing testimony that he was unable to walk more than a block due to pulmonary restrictions associated with his COPD and his use of three inhalers.  The ALJ also detailed the findings from Richard's internal medicine consultative exam at which Richard noted he experienced shortness of breath after walking 50 feet and took breaks in between cleaning due to shortness of breath.  Examination of the lungs revealed Richard was short of breath with exertion and there were diffuse expiratory wheezes.  AR 767.  The consultative examiner listed as part of his impression that one of Richard's "problem[s]" was COPD.  AR 768.  The ALJ cited records where Richard's pulmonary effort and breath sounds were normal on examination without wheezes, rales, or tenderness.  Richard's pulmonary function testing in 2013 demonstrated moderate obstructive lung disease.  Dr. Michel's treatment notes indicated Richard was coughing up dark, necrotic looking sputum and complained of shortness of breath.  As for Richard's pulmonary function testing on March 17, 2018, the ALJ stated the testing "confirm [sic] values outside the normal range."  AR 23.  Several times in his discussion of the medical evidence, the ALJ highlighted that Richard continued to smoke.  During a hospitalization in January 2019, Richard had expiratory wheezing (wheezing upon breath exhalation) in one instance and then unlabored breathing but with minimal air movement with deep inspiration and expiration at a different time.

The ALJ noted Richard followed with a pulmonologist (Dr. Michel) for his COPD, "but ultimately, the treatment that was provided to the claimant was routine and conservative, which further suggests the claimant's symptoms were not as troublesome as alleged, and contrasts with the current claim of ongoing, disabling symptoms since the alleged onset date."  AR 24.  As part of the ALJ's

subjective symptom evaluation, he stated, "Foremost, the claimant continues to smoke despite his COPD and breathing-related complaints. *Id*. The ALJ also rejected Richard's contention that his shortness of breath, among other physical issues, precluded his past relevant work where "the claimant has had COPD for many years, and there is insufficient evidence that his breathing has deteriorated in recent years." AR 25.

Lastly, the ALJ considered the medical opinions of record. He found the State Agency doctors' assessments of light exertional capacity with additional postural and environmental limitations persuasive as the State Agency doctors' opinions were "generally consistent with the record at the time given." AR 25. The ALJ found Dr. Michel's October 2018 opinion that, among other things, Richard could infrequently walk, stand, and sit and could never stoop or climb as "not persuasive" as those "very severe functional limitations" were not consistent with the record. *Id.*

## IV

Richard argues: 1) the ALJ failed to support with substantial evidence his conclusion that Richard did not medically equal Listing 3.02; and 2) the ALJ failed to support with substantial evidence his conclusion that Richard did not have mental limitations.

## A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297

F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566; 416.966.[3] The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520; 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of

---

[3] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

> impairments that is severe and meets the durational requirement;
>
> 3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;
>
> 4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and
>
> 5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Richard claims error on the ALJ's part at Steps Three and Four.

## B

Richard first argues that the ALJ's assessment of Listing 3.02 did not duly consider whether Richard equaled a listing, and the ALJ should have sought professional advice on the issue. The Commissioner counters that the ALJ acted appropriately when he did not seek a second physician's opinion regarding medical equivalence to Listing 3.02. The Commissioner also argues that the ALJ's statement that Richard's impairment did not equal a listing coupled with his subsequent discussion of COPD under this RFC analysis constituted sufficient articulation of his finding pursuant to controlling agency policy.

Richard highlights the first of three ways the Social Security Administration can find medical equivalence. 20 C.F.R. § 404.1526(b)(1) provides:

> (i) If you have an impairment that is described in appendix 1, but—
>   (A) You do not exhibit one or more of the findings specified in the particular listing, or
>   (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

The Commissioner, on the other hand, highlights Section 404.1526(c), Section 404.1526(e), and SSR 17-2p. Section 404.1526(c) provides that an ALJ's medical equivalence determination is made upon consideration of "all evidence in [a claimant's] case record about [the claimant's] impairment(s) and its effects on [the claimant] that is relevant to this finding," including the "opinion given by one or more medical or psychological consultants designated by the Commissioner." Section 404.1526(e)(3) provides that at the ALJ level, "the responsibility for deciding medical equivalence rests with the administrative law judge[.]" SSR 17-2p provides in part that if the ALJ does not believe the evidence reasonably supports a finding of medical equivalence, SSA does not require the ALJ to obtain medical expert evidence. SSR 17-2p at *4. Neither Section 404.1526(c) or (e) nor SSR 17-2p render the ALJ's medical equivalence analysis sufficiently articulated or supported.

Here, at Step Three, the ALJ stated with regard to Listing 3.02 that Richard did not meet that listing as the record did not show the $FEV_1$ or FVC values required. It is true, as the Commissioner insists, that "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical

8

equivalence at step 3." SSR 17-2p at *4. However, the ALJ did not explicitly recognize at Step Three or at any point in his Decision that Richard's pulmonary functioning testing – the very testing to which the ALJ cited in support of his Listing 3.02 finding – revealed Richard was just one one-hundredth of a unit from meeting Listing 3.02A. At his March 17, 2018 pulmonary function test, Richard was measured to be 67 inches with his best $FEV_1$ rating to be 1.61 post-bronchodilator. His best $FEV_1$ rating pre-bronchodilator was 1.60. Listing 3.02A provides that it is met where a male age 20 or older who is 66.50 to 68.50 inches tall without shoes has an $FEV_1$ of *less than or equal to 1.60*. 20 C.F.R. Part 404, Subpt. P, App'x 1, § 3.02A. Such a near miss to Richard meeting Listing 3.02A demanded, as articulated in SSR 17-2p, "rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Such *sufficient* rationale never did appear in the Decision.

For example, in his discussion of the record evidence for purposes of the RFC analysis, the ALJ also failed to mention that the March 2018 pulmonary functioning testing provided, point blank, that Richard's lung age was "100." AR 774. Notably, the ALJ described the March 2018 test results to merely "confirm values outside the normal range." AR 23. The ALJ noted the impression from a January 2018 chest x-ray (really a CT scan) did not show acute abnormality but did show smoking-related lung disease, and he noted a January 2019 chest x-ray "showed no acute findings, and no change from the previous year." AR 24. The ALJ did not say anything of the particular lung findings made in either 2018 or 2019: in 2018, Richard had bronchial wall thickening, centrilobular and paraseptal emphysema, and opacities suggestive of scarring; and in 2019, Richard had "[d]iffuse marked bronchial wall thickening," centrilobular and paraseptal emphysematous changes, and "probably scarring." AR 803, 804. The ALJ also did not address the discrepancies as to Richard's height that appeared in the record.

9

The March 2018 pulmonary function test record indicated Richard was 67 inches, but other records indicated he was 69 inches and he testified he was 68 inches. Listing 3.02 is met where a male age 20 or older who is 68.50 to 70.75 inches tall without shoes has an $FEV_1$ of less than or equal to 1.75. 20 C.F.R. Part 404, Subpt. P, App'x 1, § 3.02A. If Richard was actually 69 inches without shoes on, his $FEV_1$ post-bronchodilator of 1.61 would have undeniably meant he met Listing 3.02.

Though true that an ALJ may properly rely upon state agency physicians' opinions on the question of medical equivalence, there is no clear indication here that the ALJ did so or that the State Agency doctor even rendered such an opinion. *Compare Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989) (pointing out that record contained SSA forms two physicians filled out and signed which stated that the claimant's condition was not equivalent to any listing); *Duane L. v. Commissioner of Social Security*, No. 4:17-cv-04172, 2018 WL 5262083, R. & R. at *6 (C.D. Ill. Aug. 16, 2018) (pointing out that State Agency doctors opined the claimant did not meet a listing). At Step Three, the ALJ only went so far as to say "no acceptable medical source has mentioned *findings* equivalent in severity to the criteria of any listed impairment, either individually or in combination," and in his RFC analysis, the ALJ said the State Agency consultant "assessed a light exertional capacity, with additional postural and environmental limitations similar to the [RFC] herein." AR 21, 25 (emphasis added). Thus, the Commissioner's emphasis upon the State Agency doctor's finding at the reconsideration level that Richard was not disabled is misplaced. In the Disability Determination Explanation at the Reconsideration level, the State Agency doctor's notations provided little, if anything, in the way of a medical equivalence analysis.[4] The phrase "3/18 FEV1 67"/1.61" was

---

[4] In comparison, the State Agency psychological consultant at the reconsideration level in this case explicitly indicated that Richard's "mental impairment is severe but does not meet/equal the listings." AR 108.

repeated several times and was cited as support for the opinion that Richard's activities should be exertionally limited.

Lastly, some of the ALJ's rationale he provided in support of his RFC finding casts doubt upon whether he properly considered the record evidence. That, in turn, only casts more doubt on whether the ALJ sufficiently considered whether Richard medically equaled Listing 3.02A. The ALJ noted the treatment Richard received for COPD was routine and conservative. Richard argues that the ALJ's characterization was not made with sufficient context and that there is no indication that his condition required an invasive procedure to find disability. The ALJ also highlighted Richard's continued smoking "despite his COPD and breathing-related complaints as "[o]ther evidence" in the record the ALJ determined was not fully consistent with Richard's statements about the intensity, persistence, and limiting effects of his physical symptoms. AR 24. Richard argues smoking is not indicative of non-disability. The Commissioner addressed neither of these arguments in her brief. With regard to the latter smoking argument, the Seventh Circuit Court of Appeals has denounced ALJs' conclusions that claimants' continued smoking rendered their allegations of pain incredible where, for instance, no medical evidence linked a claimant's chest pain directly to her smoking and where no evidence demonstrated that the claimant would be restored to a non-severe condition if she quit smoking. *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) (stating that a claimant's continued smoking was an unreliable basis on which to rest a credibility determination given the addictive nature of smoking).

It is true that an ALJ need not discuss every piece of evidence, *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009), that the relevant Social Security Ruling provides an ALJ need not call a medical expert to assist in evaluating the issue of medical equivalence, SSR 17-2p at *4, and that an ALJ "must base his . . . decision

about whether the individual's impairment(s) medically equals a listing on the preponderance of the evidence in the record." *Id.* But none of that renders the ALJ's Listing 3.02 medical equivalence finding in this case supported by substantial evidence given the errors identified above. Put another way, those errors, coupled with the fact that pulmonary function testing placed Richard one-one hundredth of a unit from meeting Listing 3.02A outright, render the ALJ's conclusion that Richard did not medically equal that Listing inadequately supported. *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Remand is therefore necessary and the Court does not reach Richard's second argument regarding mental limitations.

## V

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 11) is GRANTED, the Defendant's Motion for Summary Affirmance (Doc. 17) is DENIED, and this matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for further consideration, consistent with this Opinion.

The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that this case is remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four."

*It is so ordered.*

Entered on December 2, 2021.

s/Jonathan E. Hawley<br>U.S. MAGISTRATE JUDGE